May it please the court. My name is Molly Quinn. I represent the appellant Brian McCoy. We're asking this court to vacate Mr. McCoy's conviction for using and carrying a firearm during a crime of violence. The crime of violence in this case was voluntary manslaughter that qualified as a crime of violence only under the residual clause of 924 C which is void for vagueness under Johnson and Davis. Voluntary manslaughter is not a crime of violence under the remaining force clause of 924 C for two reasons. First, it can be committed recklessly and second, it doesn't necessarily require the use of physical force against the person of another because it covers certain prenatal conduct. Starting with the recklessness, prenatal conduct, acts that take place, yes that's correct. Starting with the recklessness issue, the case law and the jury instruction in this case make clear that voluntary manslaughter can be committed by acting recklessly with extreme disregard for the value of human life. And this court has found in the Torres Villalobos case that a manslaughter statute that can be committed recklessly is not a crime of violence under the definition of crime of violence under 18 U.S.C. section 16 which is identical and needs to be interpreted identically to the 924 C definition of crime of violence. Well has that been superseded by the more recent cases that say recklessness does in fact? No, we don't believe it has. First of all, it hasn't. I'm sorry. That recklessness conduct can in fact meet the standard? No, we don't believe it has. We believe there still is room to read Torres Villalobos as good law. First of all, Wazin itself didn't supersede Torres Villalobos because Wazin addressed of course a different definition, the definition of misdemeanor crime of domestic violence and expressly reserved the question of whether section 16 which again is identical to 924 C could have a different higher mental state requirement. And we are aware of course of the line of eight circuit cases saying that recklessness can be sufficient for the force clause and the ACCA in crime of violence contexts. But the circuit hasn't held that recklessness is per se in every case in relation to every statute necessarily the use of force or necessarily sufficient for the use of force. Then how do we distinguish because I think you sort of premised this on the language is very similar if not exactly the same in the various spots that you've identified. So we've got fog, we've got a line of cases that have said recklessness is enough and post Wazin. How do you carve out a different say that every statute that requires recklessness is going to be sufficient. There is still the line of cases about reckless driving resulting in injury being insufficient for the force clause under those statutes. And I would just refer back to the more specific Torres Villalobos case which is interpreting a statute that is identical to this statute. And so it would be a new law for this court to find that Torres Villalobos is superseded and recklessness just in general is sufficient for the use of force under the 924 C force clause. You did want to briefly address the government's argument in the supplemental briefing that extreme indifference recklessness is different that this is that this case this federal manslaughter statute is even different than the statute in Torres Villalobos. I mean the 8th Circuit hasn't treated in the context of a force clause the 8th Circuit hasn't treated ordinary recklessness and extreme indifference reckless recklessness differently. And I'm talking about one of the resulting in injury cases the Booth's case from 2014 which is still good law in this circuit and the statute in that case was a state statute that covered the causation of serious injury under circumstances exhibiting extreme indifference with a reckless state of mind. So the fact that the voluntary manslaughter statute is an extreme indifference recklessness while the Torres Villalobos statute was what you might call ordinary recklessness in the context of the force clause the circuit isn't treating those differently. Does any circuit treat that differently that this distinction between the types of recklessness. I think we've sort of been approaching this as just generally is the mens rea of recklessness sufficient under the force clauses that use or attempted use of physical force. Are there courts that are making this distinction that the government has made here? If there are circuit courts doing that I'm not aware of them. I can say that there is a recent Ninth Circuit case in the United States versus Begay and that case held that second degree murder is not a crime of violence under the 924 C force clause because it can be committed recklessly and that also has the extreme indifference language. So I have maybe an opposite example of a situation where the Ninth Circuit is treating extreme indifference recklessness the same as ordinary recklessness for this force clause. So extreme what's the what would be the definition if you know it off the top of your head from the jury instruction for just regular old recklessness? I guess I would I'm just kind of shooting from the hip maybe a conscious disregard of risk is how I've typically seen recklessness interpreted. You know we're talking about the force clause here the circuit of course has distinguished between the different levels of recklessness for the generic definition of aggravated assault in the guidelines but that's not an issue here at least to date the court has not distinguished for the purposes of the force clause between those different levels of recklessness. What's the 2014 case you're relying on? It's United States versus Boos. I don't believe that we cited it in the briefing here. Spell it. B-O-O-S-E. Flute? What was it what you're saying? That was the Boos case B-O-O-S-E from 2014. It is cited in our briefing at the district court which is in the appendix. And the second reason that voluntary manslaughter is broader than the force clause under 924 C is that it doesn't necessarily require the use of physical force against the person of another because it covers certain prenatal conduct. Now the 924 C force clause requires that the offense have the use, attempted use, or threatened use against the person or property of another. In person is defined under federal law as excluding unborn children. And this court in Flute interpreted the manslaughter statute as covering a mother's prenatal conduct that results in the death of the child after birth. And so the unborn child is not a person within the meaning of federal law at the time of the acts or at the time of the alleged application of the force. And so that means that a mother, a person can commit manslaughter, excuse me, even where there is not another person at the time of the application of the force. And that is not the case. It's the person of another. And we are, I think the government cited in the supplemental briefing and we're certainly aware of the line of cases saying that, well, it's impossible to cause death or serious bodily injury without the use of force. And those cases don't reach this situation. They don't reach this far. All of those cases, the Peoples, Rice, Winston case, that line of cases in this circuit, in the statutes that issue in those cases, there is another person under the meaning of federal law at the time of the application of the force. And so to apply that line of cases in this context, where a person can commit manslaughter at a time where there is no other person at the time of all of the acts that take place that constitute the offense, would extend that doctrine to a time where there is no person to use the force against. And again, we're relying on that language in the 924C force clause that it has to be the use of force against the person of another. And it would take that line of cases too far and extend it too far to say that that is satisfied, where at some point before the offense is completed, before the crime of manslaughter is completed, there is a separate person of another. But the crime only comes to fruition, though, when there is a separate person under that theory, though, right? Yes, that's true. It's sort of an ongoing kind of an offense. I mean, I don't know if it's technically ongoing, but the the elements are met at different periods of time. That's correct. I think the phrasing used is murder manslaughter, in this case, as a crime of consequence, which means that the offense isn't complete until there's a death. But that's not what 924C says. 924C doesn't say a crime is a crime of violence if there is a the death of a person at some point before the offense is completed. 924C says, does the statute require the use of physical force against the person of another? And so our interpretation... Element, as an element. As an element, that's right. And so we understand manslaughter can't be complete under the flute case, just in general, until there is a person. I mean, that can encompass prenatal conduct, but that takes it outside the force clause, because the force clause of 924C requires that the force be used against the person of another. And so there isn't, under the flute case, necessarily a person at the time of the application of the force. And so it would extend that line of cases that is premised on the assumption that there is another person at the time of the force. It would extend it too far. So based upon that, you're recommending what? We're recommending that the court find that voluntary manslaughter is broader than the 924C force clause, because it encompasses acts that take place that aren't against the person of another at the time of the application of the force. And therefore, Mr. McCoy's conviction for 924C should be vacated, because voluntary manslaughter for him applied only under the residual clause. Vacate his... Is that what you said? Yes. We would ask that his conviction and sentence be vacated, because voluntary manslaughter only qualified under the residual clause. It did not, and does not, qualify under the force clause. Wait, vacate his conviction or just his sentence? Vacate his conviction, because the crime of violence is an element of his offense. So we're asking that the 924C conviction be vacated. The voluntary manslaughter conviction and sentence would remain. We will be asking that the 924C conviction be vacated. I see. I did want to briefly address... What was the consecutive sentence for that then? He received 96 months for voluntary manslaughter and then 120 months for the 924C, based on the discharge of the firearm. At the time, the statutory maximum for voluntary manslaughter was 10 years. He has served about two days shy of 14 years at this point. So the remedy in this case would be pretty clean. Just vacate the 924C conviction. What about the absurdity of saying what he did is not a crime of violence? I think that that is something that courts have been saying since they started applying the categorical approach. The court's job and our job is to analyze the elements under the categorical approach in relation to what the statute says. This came up in the Davis case. Of course, Congress could... These are all federal offenses. So Congress could enumerate what they meant by a crime of violence. They could add second-degree murder, first-degree murder, voluntary manslaughter, involuntary manslaughter. They could add all of those. The federal And I guess this became absurd now because the residual clause is void for vagueness. And before this point, you know, the last couple of years, these convictions would have qualified under that clause. So this is a new problem created by the Supreme Court's invalidation of these types of clauses. I would reserve the remainder of my time for rebuttal. Thank you. Very well. Mr. Volk, we'll hear from you. Thank you, Your Honors. May it please the court and counsel. My name is Rick Volk. I'm in a criminal AUSA out of the Bismarck office in North Dakota. I'm also the attorney who tried this case originally back in the mid-2000s. This matter is here before this court on a certificate of appealability that was granted as to whether or not Section 924C3B, which is... Speak into the microphone. I'm sorry, sir. I'm having trouble hearing both of you. So the certificate of appealability was as to whether 18 U.S.C. 924C3B, which was the residual clause definition of crime of violence in 924 was unconstitutionally vague. And if so, whether or not Mr. McCoy was entitled to any relief. As I noted in the supplemental brief that was filed, Davis took care of the original issue. So that's decided. But the second issue as to whether or not Mr. McCoy is entitled to relief is answered in the negative. No, he's not. And the reason for that is because voluntary manslaughter is a crime of violence under the elements clause, which is 924C3A, defining a crime of violence as a crime that has the use, attempted use, or threatened use of physical force against another person. I think we need to look at what this crime of violence, in fact, was. It was voluntary manslaughter. That is effectively a partial defense to second-degree murder, which requires an action by an individual that is done in heat of passion, which is defined as based upon adequate provocation, meaning the individual took some deliberate action, deliberate action, in response to provocation by another person. That's not the type of recklessness this court or any other court has ever had any issue with. In fact, the Eighth Circuit pattern instruction on voluntary manslaughter specifically talks about the conduct being intentional and purposeful, not reckless. Are we looking only at voluntary here and not at involuntary, or is Section A indivisible? Well, yes. We are looking only at voluntary manslaughter here. The manslaughter statute is 1112, 18 U.S.C. 1112. It specifically says there are two kinds of manslaughter. All right. So you think it's divisible? Yes. In the lingo of this? Yes. You think it's what? It is divisible. It is. There are two separate crimes that are contained. And would that take care of the Flute case then, because Flute was involuntary? I believe it does. Yes. And I noted that in our supplemental brief as well. Flute is an involuntary manslaughter case. Is there any authority that's gone through the divisibility analysis on 1112A? I don't believe so. I haven't found any, Your Honor. I don't know of any. But it is clear just based on the statute, the wording of the statute itself. The punishments are different. The punishments are different. The punishments are different. Voluntary manslaughter is up to 15 years imprisonment. Involuntary is eight years of imprisonment. So there are significant differences in the penalty. There are also significant differences in the elements, because involuntary manslaughter has a mens rea of gross negligence. Effectively, voluntary manslaughter has a mens rea of malice aforethought. It is simply negated by the presence of heat of passion, that provocation. So it has the same mens rea as murder. I don't know if that's right. I mean, it's without malice. It says without malice, but when you look at the actual instructions, the instructions are that the person... I can explain it this way. When one charges second degree murder, and there is a request for an included offense of voluntary manslaughter. Lesser included. Lesser included offense. The government must prove beyond a reasonable doubt in the murder elements that the defendant did not act under heat of passion. And that was the instruction in this case. That was included there. It's a negative element. We have to disprove heat passion. When the jury finds heat of passion exists, it then convicts of voluntary manslaughter. It essentially says we forgive malice aforethought. We take out malice because of heat of passion. But the actual mens rea part is identical. It is still an intent to kill, an intent to cause serious bodily injury, recklessness, reckless conduct in extreme disregard to human life. That is the same thing as malice aforethought. It's not the same as malice aforethought. Well, I don't understand that, but... Look at the Eighth Circuit pattern instruction, Your Honor. It does say willfully in extreme indifference to the value of human life in malice aforethought. That's how it's defined in the Eighth Circuit instruction. That is part of it. So they're equivalent. And I cited to the cases that do say effectively voluntary manslaughter, heat of passion works as a partial defense to second-degree murder. Well, so you're arguing now or suggesting that based on flute, we should now remand to the 24C3A is no longer applicable to... No, I'm not arguing that, Your Honor. I'm not saying resentencing is necessary. I'm saying... You're arguing to the contrary. I'm arguing that voluntary manslaughter qualifies as a crime of violence under 924C3A and that Mr. McCoy's conviction on that offense should yet remain intact. I see. Okay. Right? The line of cases that this court has had where you've had issue with recklessness being the mens rea element have all referred to the matter as being one, a statute that covers simple reckless driving resulting in injury. That's not voluntary manslaughter. That would likely be involuntary manslaughter. I've tried many of those cases where you have an individual who's engaged in driving under the influence, a DUI that results in injury. But that's a standard of gross negligence. That's not reckless. That's gross negligence. The distinction I would make for you is this. When one engages in involuntary manslaughter, it's a possibility that when somebody gets in their car, they're going to crash into somebody else because of their impairment. And that's the disregard of the risk that they're engaging in. For reckless conduct, and the type that's involved here in voluntary manslaughter, it's the person who gets in his car, impaired or otherwise, and purposefully and intentionally drives that car into another person's vehicle. They're engaging in an extreme risk to another person. Whether or not they specifically intend to cause death or injury to that person, they're engaging in an intentional and purposeful act to use physical force and endanger that person. That's the distinction that's really at issue with what is recklessness in the sense of voluntary manslaughter and gross negligence, which I think is probably what this in the sense of reckless driving resulting in injury to somebody. There's a vast difference there. But even in the Supreme Court, at least in Boise, left open, look, we're not going to 16 on the recklessness. That could be a different standard. So I'm not sure that we can collapse as you're proposing, or at least how I'm hearing you propose, that we collapse when it's voluntary manslaughter. We're going to collapse reckless as really just intentional acts that were carried out by the defendant. But that's effectively what this statute is. That's what voluntary manslaughter is, in fact. It requires that intentional action by the defendant. It's in provocation. One can look at this statute. You have to have provocation, heat of passion to convict a voluntary manslaughter. That is an element of the offense. That requires a defendant to act in response to somebody. Act intentionally or recklessly. But it's still in response. It's an action that is deliberately taken by that person. Is your distinction with the heat of passion portion, or is it what you raised, I think, in your supplemental briefing on this? This is sort of recklessness plus. Well, I think it's both. And I addressed both. It is recklessness plus. It is more than just simply gross negligence. That's this possibility that something could happen to somebody else. Gross. I mean, you've separated gross negligence and recklessness, right? Yes. So now we're going from recklessness to whatever your recklessness plus is, that sort of, you're saying, takes it out of any kind of analysis of just regular recklessness. In particular with this statute, because it's an element of this statute. It would remove this statute in particular, Your Honor, from that line of cases where the court has had issue with a statute that has just simple recklessness resulting in injury. Do that. I mean, you've highlighted a couple of things. You're saying it's in response to, it's a defense. I can't imagine any rule that you may want us to apply here would apply anywhere else. Would this be a one-off? I guess I don't, I'm not certain how to answer that because I'm in this particular case. And as I look at what actually happens in a voluntary manslaughter case, it does seem that it's this particular statute that I need to look at and address. And how it applies to other cases, certainly murder would also have somewhat of the same issue because malice aforethought does have that extreme indifference language in it as well. So there's a possibility that would yet apply to that as well. I'm just thinking of other statutes. I mean, there's probably a multitude of state statutes where it may have a similar type of language, but I can't address any or I can't point you to any. What is the reason that you think we need to limit this decision to a statute or rely on this extreme indifference concept? What are you trying to avoid? What other reckless statutes? Well, I'm not necessarily, Your Honor. I'm just pointing that out because I think the Supreme Court has said that recklessness can constitute a mens rea element in Voisin. And this court has extended it beyond just what was in Voisin, which was misdemeanor crimes of domestic violence under 922 G9. This court has extended that decision to the ACCA 924 E cases in Fogg and in Ramey to felon in possession cases under 922 G1. And I believe both Judge Kelly and Judge Colleton, you were both on the Ramey case and extended Voisin's recklessness mens rea element as being able to be inadequate mens rea for a crime of violence in that matter. So this court in particular has gone beyond simply the misdemeanor crimes of domestic violence that both Castleton, which was the case before Voisin, and Voisin dealt with. And so I think there are multiple reasons. One, recklessness should qualify. But if this court has some concern that it doesn't, this is a higher degree of recklessness here. And we have an additional element of heat of passion that exists in this particular statute that... Well, I thought the... All right, we'll look at that. I thought the federal manslaughter statute was pretty much adopting the common law definition of manslaughter, so I wonder how unique it really is. But you say the Ramey case, I don't see that cited. Can you refresh my memory? What's the year on that? How do you spell that? Or what's the... R-A-M-E-Y, Your Honor. I have it. Did anybody cite it, or did you just come upon it late? You're adding it. I don't know if it was cited, Your Honor, by either of us, but it's R-A-M-E-Y. What's the citation? I don't know if I have it directly in front of me, Your Honor. We'll find it. Thank you for your argument. Yes. Ms. Quinn, we'll hear from you in rebuttal. I want to start with the distinction between involuntary manslaughter and voluntary mans... Please talk into the microphone. Thank you. I want to start with the distinction between voluntary manslaughter and involuntary manslaughter. That would be relevant to the flute use of force against the person of another argument. We don't disagree that manslaughter is divisible between voluntary and involuntary manslaughter, but that doesn't matter here because the operative language in the flute case that the court was interpreting is common between manslaughter and involuntary manslaughter. The statute defines manslaughter as the unlawful killing of a human being without malice. That applies to both voluntary manslaughter and involuntary manslaughter, and that's the language that the court is interpreting in the flute case. And then the voluntary and involuntary is divided between the different types of mens rea, so that would be a separate argument than whether the statute requires the use of force against the person of another. So the operative language in the flute case is still the unlawful killing of a human being without malice. But your argument is that the flute case shows that manslaughter can be committed without using force against the person of another, but the only scenario in which that flute case would apply is under involuntary manslaughter. That's the only scenario in which it has applied so far. How would it apply under voluntary? I mean, how would someone in the heat of passion or sudden quarrel be convicted like on the flute theory? The situation that I can think of when I was thinking through that question was a mother who, in the heat of passion or with adequate provocation relating to circumstances in her own life, attempts suicide or takes some action like that that would meet the heat of passion without malice where the mother survived, but unfortunately the baby died after birth. So I think that there are factual scenarios where a person's conduct, because it's really only separated by what led to that conduct, not the amount of force that's used in terms of separating voluntary and involuntary manslaughter. So we do believe that the distinction between voluntary and involuntary manslaughter doesn't matter in terms of the flute argument because the statutory language at issue in that case is the same as what defines the elements of manslaughter in terms of the unlawful killing of a human being. So you're arguing that based on flute we should probably remand the case to the district court for resentencing because 924C3A is now inapplicable to voluntary manslaughter in this court? We are asking the court to find that 924C3A, the force clause, that voluntary manslaughter doesn't qualify under that definition, but because this is a separate crime, the 924C conviction is a separate crime, we're asking that entire conviction be vacated, the conviction and the sentence. Vacate the conviction? That's correct. Okay. And then that would leave him with just the voluntary manslaughter conviction. I see that my time has expired. Thank you. Very well. Thank you for your argument.